# EXHIBIT 1



5-17-21

**David Duta**
8 Santa Fe
Irvine, CA 92604

Dear David:

It is our pleasure to confirm our offer of employment to you as "Sr. Vice President-West" at Sasser Companies, LLC. In this position, you will report directly to Miguel Figueroa, Chief Operating Officer.

Salary: Your Salary is $210,000.00, less all required deductions and withholdings. Kicker of 1% of revenue after the first 2 months, accrued/paid quarterly the following month once financials are completed. The kicker will only be active if the net profit margin is at or above 10% per calendar year accumulative positive and negative applied as running average. YTD accrual resets Jan 1 of each year.

Start Date: 5-17-21

Benefits: Available to Full-Time Employees (After 60-day probationary period)
- Medical, Dental, Vision, Short-Term and Long-Term Disability, Accident Insurance, and Specified Disease (Package to follow)
- The difference in the Cobra plan vs. current plan will be reimbursed for 60 days.

Paid Time Off: Available after 60-day probationary period and is based on Date of Hire:
- Paid Time Off (PTO):
  - You are entitled to 20 days (or 160 hours) of PTO during your first year of employment.
  - PTO is accrued per pay period following the start date.
  - CA Law states you can carry over up to 1.5x of your yearly PTO maximum PTO. Will want to adjust for compliance. For example 80 hours earned annually = 120 hours of carryover max. This also means nothing is accrued once you reach max carry over unless the time is used.



- Holidays:
    - 9 Observed Holiday's which include: New Year's Day, Good Friday, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, Day after Thanksgiving, Christmas Eve and Christmas Day.

Company 401k Plan Contribution: Standard employee plan is outlined below. Highly compensated employee plans are subject to change based on plan rules.

- Employees are eligible to enroll and participate in the 401k plan after having worked 6 Months. There are 2 entry dates per year – January 1st and July 1st.
- A minimum 3% payroll deduction is required unless you opt out of the plan completely.
- Company match is discretionary and can be changed or stopped at any time. Current match is 50% of the first 6% you contribute.

    Examples:
    - Employee contributes 6%, Sasser Companies contributes 3%
    - Employee contributes 4%, Sasser Companies contributes 2%
    - Employee contributes 3%, Sasser Companies contributes 1.5%

Equity Distribution: Sasser West

Equity distribution plan is outlined in the table below. Equity in Sasser West Operations comes with a base of 20% equity share and will increase based on the scaling table below (Note: Net Profit will be calculated based on the Sasser West P&L). Equity value will be calculated bi-annually and distributions be paid the following month once financials are completed. Employee's equity distribution will be less pro-rated equity share for Gerardo Barriga Arevalo (Jerry Arevalo), which will be capped at 10% of net profit.

| | |
|---|---|
| Base 20% (15% David; 5% Jerry) | <10% |
| 25% (18.75% David; 6.25% Jerry) | 10% |
| 30% (22.5% David; 7.5% Jerry) | 15% |
| 35% (26.25% David; 8.75% Jerry) | 20% |
| *5% Base Increase (3.75% Increase David; 1.25% Increase Jerry) | *Base 25% equity share after 5 years or $10M Revenue- whichever comes first |



Insurance, Indemnification and Parachute clause:

Insurance:

For the term of this Agreement and any extensions thereof, Sasser Companies, LLC., "the Company", can at its expense procure and keep in effect life insurance on the life of the Employee, payable to such beneficiaries as the Employee may from time to time designate, in an aggregate amount determined by the Company of at least $1,000,000. Following the Expiration Date, Employee shall have the right to assume the remaining premium obligations and receive the benefits from such policy.

Indemnification:

The Company agrees to indemnify and hold harmless Employee, to the fullest extent permitted by the laws of the State of North Carolina and applicable federal law in effect on the date hereof, or as such laws may be amended to increase the scope of such permitted indemnification, against any and all Losses if Employee was or is or becomes a party to or participant in, or is threatened to be made a party to or participant in, any Claim by reason of or arising in part out of an Indemnifiable Event, including, without limitation, Claims brought by or in the right of the Company, Claims brought by third parties, and Claims in which Employee is solely a witness. For purposes of this section, "Claim" means any proceeding, threatened or contemplated, civil, criminal, administrative, or arbitration action, suit, or proceeding and any appeal therein and any inquiry or investigation which could lead to such action, suit or proceeding. "Indemnifiable Event" means any event or occurrence, whether occurring before, on, or after the date of employment, related to the fact that Employee was a director, officer, employee, or agent of the Company or by reason of an action or inaction by Company in any such capacity whether or not serving in such capacity at the time any Loss is incurred for which indemnification can be provided under this Agreement. "Losses" means any and all damages, losses, liabilities, judgments, fines, penalties (whether civil, criminal, or other), ERISA excise taxes, amounts paid or payable in settlement, including any interest, assessments, reasonable expenses, including attorney's fees, experts' fees, court costs, transcript costs, travel expenses, printing, duplication, and binding costs, and telephone charges, and all other charges paid or payable in connection with investigating, defending, being a witness in, or participating (including on appeal), or preparing to defend, be a witness or participate in, any Claim.



David's Parachute Clause:

    (a) "Cause" shall mean any of the following:

        i. the commission of an act of fraud, embezzlement, or material dishonesty which is intended to result in substantial personal enrichment of Employee in connection with Employee's engagement with Sasser Companies, LLC.;
        ii. Employee's conviction of, or plea of nolo contendere, to a crime constituting a felony (other than traffic-related offenses);
        iii. Employee's willful misconduct that is materially injurious to Sasser Companies, LLC.;

    (b) "Death" The employee's engagement shall terminate automatically upon his death.

    (c) "Retirement" shall mean the Employee has reached an age of at least 62 ½ years and no longer wishes to continue his duties with Sasser Companies, LLC.

    (d) "Amicable Separation", "Sale or Merger" shall mean that both Sasser Companies, LLC. and the Employee mutually agree to end the employee/ Company relationship for any reason(s), or that Sasser Companies, LLC. completes a Sale or Merger with another party.

Payments Upon Termination of Engagement.

    (a) Termination for Cause. In the event that Employee's engagement is terminated for Cause pursuant to the previous sections, Sasser Companies, LLC. shall compensate Employee any unpaid salary for work completed up unto the date of the terminating and/ or criminal offense.

    (b) Termination for Death. In the event that Employee's engagement hereunder is terminated for Death pursuant to the previous section, the Company shall compensate Employee any unpaid salary for duties completed up unto the date of

    (c) death and the Employee's pro-rata share of 40% of the trailing 12-months net profit (as determined by GAAP standards) times three (x3).

Phone: (336)449-1144    PO Box 10, Whitsett, NC 27377    Fax: (336)449-1151
www.SASSERCOMPANIES.com

Case 1:24-cv-00107-LCB-LPA   Document 1-1   Filed 02/12/24   Page 5 of 6



(d) Retirement, Amicable Separation, Sale or Merger. In the event that Employee's engagement hereunder is terminated for Retirement, Amicable Separation or the Company completes a Sale or Merger with another party, pursuant to the previous sections, the Company shall compensate Employee any unpaid salary for duties completed up unto the date of the immediately aforementioned event(s) and the Employee's pro-rata share of 40% of the trailing 12-months net profit (as determined by GAAP standards) times three (x3).

(e) Equipment & Vehicle Payout in Sale, Merger, or Retirement. A payout equivalent to 50% of the fair-market value of equipment and vehicles purchased wholly with Sasser California funds wholly owned by Sasser Companies, LLC will be made to Employee in the event of Employee Retirement, Sale, or Merger.

Equipment: All issued equipment is owned and provided by the Company, Sasser Companies, LLC. Equipment to be provided for use in this position will be:

- Company Shirts/Jacket (10 shirts/1 jacket) – will be ordered after 60-day probationary period.
- Vehicle, vehicle ins., gas card, expense card, cell phone, computer & ipad.
- Submitted purchased equipment and supplies prior to employment with Sasser will be reimbursed once items have been accounted for and verified on site.

This offer is contingent upon passing our mandatory screening process, which will include a reference check, background check, pre-employment drug test and a Motor Vehicle Report. To confirm your acceptance of this offer of employment, please sign below and return to Miguel Figueroa within 48 hours, at MFigueroa@SasserRestoration.com. If you have any questions, please call me at 336-449-1144.

We look forward to having you join the Sasser Companies, LLC. team.

_____  5/17/21
Candidate Signature        Date

_____  5-17-21
Company Representative Signature  Date

Phone: (336)449-1144    PO Box 10, Whitsett, NC 27377    Fax: (336)449-1151
www.SASSERCOMPANIES.com

Case 1:24-cv-00107-LCB-LPA   Document 1-1   Filed 02/12/24   Page 6 of 6